UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **PAULA CALHOUN**,<br><br>        Plaintiff,<br><br>        v.<br><br>**UNITED STATES OF AMERICA**,<br><br>        Defendant. | Case No. 22-cv-1338 (CRC) |

## MEMORANDUM OPINION AND ORDER

While the internet has brought information on medical diagnosis and treatment to the masses, proving a medical-malpractice claim in court still requires calling expert witnesses to explain matters to the jury. Unfortunately for Plaintiff Paula Calhoun, she has not identified any experts to support her claim of malpractice based on care she received at the D.C. Veterans Affairs Medical Center despite being given ample opportunity to do so. The Court must therefore grant summary judgment to the government on Calhoun's claim.

**I.   Background**

    A.  <u>Factual Background</u>

Paula Calhoun is a veteran and retired employee of the D.C. Veterans Affairs Medical Center. Def.'s Ex. 2 ("Calhoun Depo") at 7:4–5, 10:25–11:1. Prior to her retirement, she worked as a credentialer investigating applicants for positions at the Department of Veterans Affairs. <u>Id.</u> at 21:4, 6–8.

Calhoun has had type 2 diabetes since 2004. Id. at 39:13; Pl.'s Stmt. of Undisputed Facts ¶ 1.[1] She takes Metformin and Saxagliptin to treat her diabetes, and also took medications for cholesterol, hyperthyroidism, and high blood pressure before her heart attack. Id. ¶ 2–4. The Department of Veterans Affairs determined that Calhoun was 50% disabled in 2014, an assessment that increased to 80% disabled in 2021. Id. ¶ 7. Calhoun's disabilities include the loss of hearing in one ear. Calhoun Depo at 5:21, 24:25. She also has sleep apnea. Id. at 25:4.

Prior to her heart attack, Calhoun's doctors instructed her to change her diet by eating food with less sodium and cholesterol. Pl.'s Stmt. of Undisputed Facts ¶ 5. She engaged in moderate physical activity—she would walk for about an hour each day and ride her bike for about an hour each month. Calhoun Depo at 28:9–12, 20–22. She smoked a pack of cigarettes each day for over twenty years until her heart attack. Pl.'s Stmt. of Undisputed Facts ¶ 6. "Leading up to the heart attack," Calhoun felt her health "was deteriorating," as she experienced chest pain and shortness of breath. Id. ¶¶ 8–9; Calhoun Depo at 32:4–5. She also struggled to fall asleep because she was "short of breath." Calhoun Depo at 32:11–14.

For three to four years before her heart attack, Calhoun repeatedly went to the emergency room with symptoms including "bad chest pain" and brain fog, which led her to believe she was having a heart attack. Id. at 33:19–20, 22, 34:8, 24; Compl. ¶ 16. During these visits, D.C. Veterans Affairs medical staff told Calhoun she was fine or that she was "having anxiety" or a "panic attack." Calhoun Depo at 36:16–18; Pl.'s Stmt. of Undisputed Facts ¶ 12. Some doctors also suggested that she seek mental health counseling. Pl.'s Stmt. of Undisputed Facts ¶ 12; Calhoun Depo at 46:21–23. Calhoun believes the doctors who treated her neglected to perform

---

[1] This reference is to Calhoun's response to the government's statement of undisputed facts, as she did not file a separate statement.

all appropriate tests.  For instance, she asserts that even if her EKG results came back normal, doctors "could have performed a cath[eterization]."[2]  Calhoun Depo at 35:20–22.

In early January 2017, Calhoun suffered a major heart attack, which required her to undergo quadruple bypass surgery.  Pl.'s Stmt. of Undisputed Facts ¶ 13; Calhoun Depo at 49:5–7.  She then went through a "grueling recovery" involving cardiac rehabilitation every day for two and a half months.  Calhoun Depo at 49:19-22, 50:10.  Although Calhoun returned to her full-time credentialing position, she had to "retire early" in January 2019 because she "couldn't keep up with the pace" after her heart attack.  Id. at 22:8–9, 50:21–22, 54:10–11.  Post-heart attack, she has resumed household tasks, though at a "reduced or limited . . . capacity."  Id. at 52:4–5.  She becomes winded more easily and sometimes needs more help cooking.  Id. at 30:8–10, 11–17.  And she experiences "pain and suffering [] every day," including depression, stemming in part from her fear of another heart attack.  Id. at 62:1–5, 21, 63:6–7.

B.  Procedural History

Calhoun presented her medical-malpractice claim to the Department of Veterans Affairs in June 2017.  Pl.'s Stmt. of Undisputed Facts ¶ 14.  The Department denied her claim in March 2019 and denied her request for reconsideration on March 11, 2021.  Id. ¶¶ 16, 18; see Def.'s Ex. 5 ("Denial of Reconsideration Letter").  Calhoun's deadline to file suit fell six months later on September 11, 2021.  Pl.'s Stmt. of Undisputed Facts ¶ 19.

On September 13, 2021, Calhoun requested a 120-day filing extension.  Id. ¶ 21.  The Court, through Judge Amy Berman Jackson, granted the extension, observing that the limitations

---

[2] A cardiac catheterization is a procedure used to diagnose heart problems by threading a catheter through blood vessels and to the heart.  Am. Heart Ass'n, Cardiac Catheterization, https://www.heart.org/en/health-topics/heart-attack/diagnosing-a-heart-attack/cardiac-catheterization.

periods under the FTCA are "non-jurisdictional and subject to equitable tolling" and ordering Calhoun to file her complaint by January 10, 2022. Def.'s Ex. 4 ("21-mc-118 Docket"), Sept. 29, 2021 Min. Order. Calhoun did not file her complaint by that date, however. Pl.'s Stmt. of Undisputed Facts ¶ 26. On April 20, 2022, Calhoun informed the Court that she "did not receive the notice" of its prior order. 21-mc-118 Docket, Apr. 25, 2022 Min. Order. Judge Berman Jackson therefore "set a new deadline," ordering Calhoun to file her complaint by May 16, 2022. Id.

Calhoun, proceeding pro se, filed suit in compliance with the second extended deadline on May 16, 2022, and the case was assigned to this Court. Calhoun's complaint alleges a single claim of medical malpractice against the United States under the Federal Tort Claims Act, 28 U.S.C. § 2671.

In September 2022, the Court set a discovery schedule that required Calhoun to identify experts by February 12, 2023. Scheduling Order, ECF No. 8, at 1. Calhoun did not retain or identify experts by that deadline or at any point to date. Pl.'s Stmt. of Undisputed Facts ¶¶ 32–33. Calhoun says she attempted to retain experts, but her efforts were unsuccessful. Id. ¶¶ 34–35.

The government now moves for summary judgment on two grounds. First, it urges the Court to reconsider Judge Berman Jackson's decision to equitably toll the filing deadline and then dismiss the suit as time-barred under the FTCA's statute of limitations. Second, it contends that summary judgment is warranted because Calhoun has not secured the expert testimony required to prove her claim. Concurring on the second point, the Court will grant the government's motion.

## II. Legal Standards

To prevail on a motion for summary judgment, the moving party bears the burden of demonstrating "that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986); Holcomb v. Powell, 433 F.3d 889, 895–96 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the outcome of the litigation. Holcomb, 433 F.3d at 895; Liberty Lobby, 477 U.S. at 248. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895.

In considering a motion for summary judgment, the Court must resolve all factual disputes and draw "all justifiable inferences" in favor of the non-moving party. Liberty Lobby, 477 U.S. at 255; see also Mastro v. Pepco, 447 F.3d 843, 850 (D.C. Cir. 2006). When "determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." Local Civ. R. 7(h)(1).

## III. Analysis

### A. Statute of Limitations

The government first contends that Calhoun's claim is time-barred under the applicable statute of limitations. The Court concludes, however, that the government has not met the high bar to secure reconsideration of Judge Berman Jackson's prior application of equitable tolling to Calhoun's claim.

The parties agree that under the FTCA's limitations period, Calhoun had to file suit by September 11, 2021. Pl.'s Stmt. of Undisputed Facts ¶ 19. It is undisputed that Calhoun did not

5

file her complaint by then.  Id. ¶ 20.  Judge Berman Jackson, however, granted Calhoun two extensions—the first until January 10, 2022, and the second until May 16, 2022.  21-mc-118 Docket, Sept. 29, 2021 Min. Order, Apr. 25, 2022 Min. Order.  The government agrees that Judge Berman Jackson equitably tolled the FTCA's limitations period to grant the first extension.  Mot. for Summary Judgment at 3–4.  But it argues that because she did not mention equitable tolling when granting the second extension, "the Court did not find that equitable tolling was warranted, but granted Plaintiff an extension, nonetheless."  Id. at 5.

The Court disagrees with this characterization.  Having already established that the FTCA's limitations period is subject to equitable tolling, Judge Berman Jackson did not need to repeat herself in granting the second extension.  And there is no way to read her April 2022 minute order *other* than as an application of equitable tolling, as it would be illogical to grant Calhoun an extension to file a time-barred complaint that would have been dead on arrival.

The government's argument, therefore, is best understood as a request to reconsider the prior application of equitable tolling under Rule 54(b).  See Mot. for Summary Judgment at 5 n.1.  Courts do not grant motions for reconsideration "in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice."  Shea v. Clinton, 850 F. Supp. 2d 153, 157–58  (D.D.C. 2012).  The government has not met that demanding standard here.

Judge Berman Jackson equitably tolled the limitations period for a second time because Calhoun informed the court in April 2022 that she "did not receive the notice" of its prior order extending the deadline to file until January 2022.  21-mc-118 Docket, Apr. 25, 2022 Min. Order.  The government suggests that Calhoun's lack of notice does "not support equitable tolling."  Mot. for Summary Judgment at 3.  But courts in this district have relied on a plaintiff's failure to

6

receive notice of court orders as a basis for equitably tolling filing deadlines.  See Williams v. Ct. Servs. & Offender Supervision Agency for D.C., 840 F. Supp. 2d 192, 196–97 (D.D.C. 2012) (equitably tolling filing deadline after plaintiff received late notice of the court's denial of his IFP motion); Baker v. Henderson, 150 F. Supp. 2d 17, 22–23 (D.D.C. 2001) (equitably tolling filing deadline after court did not send notice to plaintiff that her IFP motion had been denied and plaintiff learned of the denial by visiting the courthouse one month later).  And the "lack of sufficient notice" is "particularly unfortunate" where, as here, "the plaintiff is not represented by counsel."  Baker, 150 F. Supp. 2d at 22–23.

The government retorts that Calhoun did not display the requisite diligence because she did not "contact the Court to inquire about the status of her motion" or "look on Pacer."  Mot. for Summary Judgment at 3.  The Court agrees that Calhoun could have more diligently pursued her claim.  But she appears to have contacted the Court to request a further extension soon after receiving notice of the first extension.  Opp'n at 2–3; 21-mc-118 Docket, Apr. 25, 2022 Min. Order.[3]  And courts have found a plaintiff's prompt action after receiving notice of the court's order "to be indicative independently of the plaintiff's diligence."  Williams, 840 F. Supp. 2d at 197 (citing Baker, 150 F. Supp. 2d at 22).  It is unreasonable, as well, to expect a pro se plaintiff to have access to Pacer.

In any event, even if this Court would not have equitably tolled the limitations period in the first instance, that is not the question it now confronts.  Instead, the government must show

---

[3] The Court also observes that Calhoun appears to have provided an explanation to Judge Berman Jackson that is not reflected on the docket before she granted the second extension. Opp'n at 2; see 21-mc-118 Docket, Apr. 25, 2022 Min. Order.  Given that this Court does not have the benefit of that explanation, it is especially unwilling to reconsider Judge Berman Jackson's ruling.

that the application of equitable tolling was "clearly erroneous and would work a manifest injustice." Shea, 850 F. Supp. 2d at 157–58. The government has not made that showing here.[4]

### B. Lack of Expert Testimony

The FTCA "waives the United States's sovereign immunity for negligent acts committed by its agents within the scope of their employment." Brashear v. United States, 847 F. Supp. 2d 41, 44 (D.D.C. 2012). Under the FTCA, the United States may only be held liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. To determine liability, courts must apply "the law of the place where the act or omission occurred." Brashear, 847 F. Supp. 2d at 45 (citing 28 U.S.C. § 1346(b)(1)). The FTCA thus "incorporates state law, including the elements of an alleged tort as defined by state tort law." Rhodes v. United States, 967 F. Supp. 2d 246, 288 (D.D.C. 2013). "Since the alleged acts and omissions giving rise to [Calhoun's] negligence claim against the government occurred in the District of Columbia," D.C. law applies to her claim. Id.; Compl. ¶ 7.

Under District of Columbia law, the plaintiff in a medical-malpractice action must prove by a preponderance of the evidence three elements: (1) the applicable standard of care; (2) the defendant's deviation from that standard of care; and (3) a causal relationship between the defendant's deviation and the plaintiff's injuries. Rhodes, 967 F. Supp. 2d at 289. Each element "usually must be proven by expert testimony," which is required if "a case involves the merits

---

[4] Upon its review of the caselaw, the Court has identified few cases in which a party seeks reconsideration of an order *granting* equitable tolling, rather than denying it. Indeed, the Court suspects there are only limited circumstances in which such a motion would be appropriate. See Bell v. Orange Cnty., No. 610-cv-455-Orl-35-DAB, 2010 WL 11626800, at *1 (M.D. Fla. Oct. 12, 2010) (denying defendant's motion to reconsider the application of equitable tolling to plaintiff's claim in part because "requiring Defendant to file its Answer in accordance with the Federal Rules of Civil Procedure does not present a case of clear error or manifest injustice").

and performance of scientific treatment, complex medical procedures, or the exercise of professional skill and judgment, [because] a jury will not be qualified to determine whether there was unskillful or negligent treatment without the aid of expert testimony." Id.; Derzavis v. Bepko, 766 A.2d 514, 523 (D.C. 2000); see Messina v. District of Columbia, 663 A.2d 535, 538 (D.C. 1995) (plaintiff must "put on expert testimony to establish what th[e] standard of care is if the subject in question is so distinctly related to some science, profession, or occupation as to be beyond the ken of the average layperson.") (citation omitted).  Although the expert-testimony requirement does not apply "[w]here laymen can say, as a matter of common knowledge and observation, that the type of harm would not ordinarily occur in the absence of negligence," the D.C. Court of Appeals has construed this "common-knowledge exception" narrowly.  Cleary v. Grp. Health Ass'n, 691 A.2d 148, 153 (D.C. 1997) (alteration in original) (citation omitted); Sanders v. United States, 572 F. Supp. 2d 194, 200 n.6 (D.D.C. 2008) (quotation marks omitted).

      Here, Calhoun has not presented any expert evidence establishing the standard of care applicable to the diagnosis and treatment of her symptoms prior to her heart attack.  Nor does she offer expert testimony showing that the care she received at the D.C. Veterans Affairs Medical Center caused or worsened her heart attack or its lingering effects on her heath.  As it stands, the only medical evidence before the Court is a post-operative report following Calhoun's heart attack and several discharge notes associated with Calhoun's emergency visits prior to her heart attack.  See Compl., Attachments 1–5, ECF No. 20-1 at 9–39 (page numbers designated by CM/ECF).  Those records indicate that Calhoun received some treatment of her symptoms prior to her heart attack.  See, e.g., Attachment 3, ECF No. 1-1 at 25 ("Given sx relief with atenolol . . . recommended continuation of atenolol as previously prescribed for a brief period only[.]"); Attachment 4, ECF No. 1-1 at 36 ("Patient has had longstanding palpitations for several years.

9

Has been on atenolol 50 mg QD which have controlled her symptoms.").[5]  But Calhoun offers no evidence to assist a jury in determining whether other medications should have been prescribed or other interventions considered, or at what point such additional treatment would have been appropriate.

That places this case nearly on all fours with Nichols ex rel. Hamilton v. Greater Se. Cmty. Hosp., 382 F. Supp. 2d 109 (D.D.C. 2005).  There, a pro se plaintiff brought a medical-malpractice action against Greater Southeast Hospital alleging that the hospital's negligent treatment of a patient's acute myocardial infarction and heart disease caused his death.  Id. at 111, 113.  Despite his efforts, the plaintiff failed to engage an expert prior to summary judgment. Id. at 114.  The court accordingly granted summary judgment to the defendants, reasoning that "[d]etermining how, if at all, the actions of any of the defendants contributed to [the patient's] death is well beyond the pale of 'common knowledge or experience' of a layperson."  Id. at 115 (citation omitted).  Here too, assessing whether doctors should have treated Calhoun's pre-heart attack symptoms differently falls outside a layperson's "common knowledge."  See Harling v. Dep't of Veteran Affs., No. 19-CV-01442 (ABJ), 2021 WL 1061219, at *5 (D.D.C. Mar. 18, 2021) (observing that the "standard of care and causation relating to a specific medication's effect on plaintiff's dental health is certainly beyond the knowledge of a layperson"); Gable v. United States, No. 112-cv-01634 (RMC/GMH), 2019 WL 4671528, at *11 (D.D.C. July 17, 2019) ("issues about whether a patient was properly medicated generally mandate the opinion of an expert to determine the standard of care and whether it was breached").

---

[5] Atenolol is a medication used to treat high blood pressure and chest pain.  Medline Plus, Atenolol, https://medlineplus.gov/druginfo/meds/a684031.html (last visited Sept. 27, 2024).

Moreover, the Court has given Calhoun "adequate opportunity to locate an expert, but [s]he ha[s] not done so." Nichols, 382 F. Supp. 2d at 115. Back in September 2022, the Court ordered Calhoun to identify experts by February 12, 2023. Scheduling Order, ECF No. 8, at 1. Nearly two years after the Court issued its scheduling order, Calhoun has still not engaged an expert. This case is thus unlike Harling v. Department of Veteran Affairs, where after concluding that expert testimony was required, the court declined to grant summary judgment based on the absence of an expert because it had not yet set a "timetable for the designation of experts or the initiation or completion of expert discovery." 2021 WL 1061219, at *5. It is also distinguishable from Hinton v. United States, in which the court found that the plaintiff would likely need expert testimony to prove his medical negligence claim but denied summary judgment because the parties had not yet had "an opportunity to engage in discovery." 714 F. Supp. 2d 157, 162 (D.D.C. 2010).

Calhoun requests additional time to locate experts. Opp'n at 7–8. But she offers no reason to conclude that her renewed efforts will succeed where they have so far failed. Although Calhoun sought to retain experts, the doctors she spoke to were unwilling to "give their two cents about another colleague" or "didn't really criticize any of the doctors from beforehand." Calhoun Depo at 42:18–19, 22–25. In her opposition, Calhoun confirmed that she has been unable to hire an expert and that the physicians she has approached have "stated that the only way they could [testify] is if ordered by the Court to do so." Opp'n at 7. She suggests, however, that "[e]xpert testimony may be possible once I have the power of subpoena." Id. at 8.

From this, Calhoun appears to be seeking the Court's assistance in securing an expert witness to prosecute her claim. Although the Court may designate an expert witness under Federal Rule of Evidence 706, doing so here would be an inappropriate use of that power. "Rule

11

706 allows the court to appoint an expert witness to assist *the court*, not to assist a party." Carranza v. Fraas, 471 F. Supp. 2d 8, 11 (D.D.C. 2007) (emphasis added).  Accordingly, "'litigant assistance' is not the purpose of Rule 706."  Id.  On that understanding, courts in this district and elsewhere have denied pro se plaintiffs' requests for the designation of expert witnesses when doing so "would be tantamount to the court assisting [the plaintiffs] in proving [their] case."  Id. at 10 (alteration in original); Hannah v. United States, No. 404-cv-643-Y, 2006 WL 2583190, at *4 (N.D. Tex. Sept. 1, 2006), aff'd, 523 F.3d 597 (5th Cir. 2008).  Here, too, assisting Calhoun in securing expert testimony would be tipping the scales in her favor.  This the Court cannot do.  And it would be "doubly inappropriate considering that [Calhoun] missed the deadline to perform the very action" as to which she now requests the Court's assistance. Carranza, 471 F. Supp. 2d at 10.

Because Calhoun has not secured expert testimony as required for her claim, the Court will grant summary judgment to the government.

### IV. Conclusion

For these reasons, the Court will grant [Dkt. No. 12] Defendant's Motion for Summary Judgment.  A separate Order accompanies this Opinion.

CHRISTOPHER R. COOPER
United States District Judge

Date: September 27, 2024